### 9959. BARNES *v.* THE STATE.

The verdict finding the accused guilty of carrying a pistol is without evidence to support it.

DECIDED NOVEMBER 7, 1918.

Accusation of misdemeanor; from city court of Floyd county— Judge Nunnally. June 26, 1918.

*W. B. Mebane,* for plaintiff in error.

*J. F. Kelly, solicitor,* contra.

BLOODWORTH, J. The defendant was convicted of carrying a pistol without a license. The evidence shows that a police officer went to the home of one Kizzie Terhune to search for whisky. The officer testified in part: "When I got into this room Kizzie Terhune and Felton Barnes were in the room. I first looked into a closet for some whisky, and then went to a trunk. The room was a small room and had a bed and other furniture in it. Upon finding whisky in the closet I handcuffed Kizzie Terhune and Felton Barnes together. I put the handcuffs on Kizzie's right arm

and on Felton's left arm. Felton was sitting in a chair close to the bed and trunk, and Kizzie was standing up and to the left of Felton Barnes. While these people were handcuffed and Felton sitting down in the chair near the bed, I turned around to open the trunk and see what was in it. I started to open the trunk, and as I did so I looked around, and Felton Barnes had a pistol in his hand, and just as quick as I saw the pistol I suddenly caught hold of his wrist, and the pistol fell on the bed, next to which he was sitting. It had only been a second or two after I had taken my eyes off of him until I turned my head towards him and saw the pistol. When I took my eyes off him I was standing up, and he was sitting in the chair, and then was when I saw the pistol in his hand, and caused him to drop it by catching his wrist. Felton Barnes does not live in this house but lives out in the country. I do not know whose pistol this was. I do not know that Felton Barnes carried this pistol to the house with him. I do not know that he had the pistol on him just a few seconds before I saw him with it. I do not know that he picked this pistol up from the floor where he was sitting, or from under the bed, or from off the bed. I do not know what he was going to do with the pistol. I do not know where he got the pistol. All I know is that I saw the pistol in his hand just for a moment. He never moved out of that chair to get the pistol, nor did he move after he got it. He didn't take the pistol any where nor carry it any where."

Kizzie Terhune testified: "I am the aunt of defendant. At the time in question Felton Barnes had come to my house and brought me some chicken feed and wanted to get some pills I had. He had been sick. He came in a buggy. Shortly after he got there Mr. Eubanks came into the room where we were. Felton Barnes was sitting in a chair. Mr. Eubanks began to search for whisky and found some in the closet. When he found it he handcuffed me to Felton Barnes. Felton was sitting in a chair near the bed, and I was on the left side of Felton, he being between me and the bed. I saw Mr. Eubanks grab Felton, but I never saw the pistol in Felton's hand. I was on the other side. Besides I am an old woman and can not see well, and was very much frightened at the time. I saw Mr. Eubanks take that pistol up off the bed and put it in his pocket, immediately after catching the hand of Felton. That was my pistol, and on that very afternoon I had bought some cartridges

and put five in the pistol, and put the pistol on the floor under the bed, near where Felton was sitting. Felton Barnes did not bring that pistol there with him that night, and it was not his pistol but was my pistol, and I saw the pistol lying there on the bed at the foot, the last time, just before this raid was made by the officers. I bought these cartridges and put them in this pistol because somebody had been stealing my chickens. Felton Barnes had nothing to do with it. Felton did not own this pistol, nor did he have any interest in it." In his statement the defendant said: "I was in my aunt's house on this particular occasion, havnig gone there to take some chicken feed and get some pills which she had. While I was sitting there in the room, in a chair near the bed, Mr. Eubanks came in and found some liquor in a closet, and then came and handcuffed my hand and Kizzie's hand together. She was standing up and I was sitting down in the chair near the bed. While sitting in the chair I noticed my aunt's pistol, and knew the officer would take it, and picked it up for the purpose of putting it under the quilt to keep him from getting it, and just as I picked the pistol up, to stick it under the quilt, Mr. Eubanks grabbed my arm, and I immediately turned loose the pistol, and it fell in the spot on the bed from where I got it. I had not raised the pistol five inches when he grabbed my arm, and had it in my hand but a second. I did not bring the pistol there. I do not carry a pistol, and have none in my home, nor do I own a pistol. This pistol belongs to my aunt, and I only took hold of it for the purpose of covering it up there on the bed, so the officer would not take it. I am not guilty of the offense with which I am charged."

The evidence for the defendant is unimpeached and uncontradicted, and is entirely consistent with the evidence for the State. The same can be said of his statement to the jury. Considering all the evidence, it shows that the defendant had the pistol in his hand momentarily only, and "there is no evidence that he intended to physically convey the pistol in question to some other place than that at which he received it." Applying the principles announced in the case of *Jackson* v. *State,* 12 *Ga. App.* 427 (77 S. E. 371), the evidence did not authorize the verdict, and the court erred in overruling the motion for a new trial. *Amos* v. *State,* 13 *Ga. App* 140 (78 S. E. 866); *Cosper* v. *State,* 13 *Ga. App.* 301 (79 S. E. 94). *Judgment reversed. Broyles, P. J., and Harwell, J., concur*